A03A1434, A03A1435. ABRAMS et al. v. MASSELL; and vice versa.
(586 SE2d 435)

ELLINGTON, Judge.

We granted an interlocutory appeal to defendants David Abrams, Janet Abrams, and Judith Abrams, co-executors of the estate of Bernard W. Abrams, to consider whether the trial court erred in denying their motion for summary judgment in Doreen Massell's suit to enforce a contract to make a will. Massell cross-appeals, contending the trial court should have granted her motion for summary judgment and enforced the contract. For the reasons that follow, we find the contract enforceable as a matter of law and affirm in part and reverse in part the trial court's order denying the parties' cross-motions for summary judgment.

*Case No. A03A1434*

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review the evidence de novo and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Viewed in this light, the record reveals the following relevant, undisputed facts. Bernard Abrams met Doreen Massell in 1990.

---

Abrams moved into Massell's home in 1992 and they lived together for several years. With the assistance of an attorney, Abrams and Massell executed a written contract to make a will on September 30, 1996. The contract provided:

> On August 2, 1996, Doreen executed a valid First Codicil ("Doreen's First Codicil") to her Last Will and Testament dated June 21, 1994, which codicil makes certain provisions for Bernie, a copy of which is attached hereto and by reference made a part hereof as Exhibit "A."
>
> . . .
>
> On March 25, 1993, Bernie executed a valid First Codicil ("Bernie's First Codicil") to his Last Will and Testament dated September 1, 1992, which makes certain provisions for Doreen, a copy of which is attached hereto and by reference made a part hereof as Exhibit "B."
>
> . . .
>
> Each of the parties agree that neither of them will change the bequest and devise to the other party reflected in Exhibits "A" and "B" without the prior written consent of the other party.

Abrams' first codicil provided that he would "bequeath the sum of Four Hundred Thousand Dollars ($400,000.00) to [his] friend, Doreen Massell, if she survives [him]." Massell's first codicil provided that she would leave Abrams "any interest [she] may own in [her residence] . . . provided he survives [her] by ten (10) days." After executing this contract, Massell and Abrams continued living together in Massell's home.

On May 8, 1998, Abrams left the house to visit his brother. He did not return. Abrams' brother told Massell that Abrams was not returning to her home and that Abrams wanted no further contact with her. Massell received no explanation for Abrams' behavior and never heard directly from him again. On May 28, 1998, Abrams executed a new will which revoked all prior codicils. Massell did not consent to the revocation. On June 8, 2001, Massell sued Abrams, claiming anticipatory repudiation of the contract and seeking a constructive trust and injunctive relief. Abrams died on December 18, 2001. On January 7, 2002, Abrams' son petitioned to have his father's new will probated. On May 1, 2002, with leave of court, Massell amended her complaint against Abrams to substitute his execu-

tors, in their representative capacities, and to allege that Abrams breached the contract.

Following a hearing on the parties' cross-motions for summary judgment, the superior court entered an order denying both motions. Although the court found the contract was supported by consideration and had not been abandoned by either party, it concluded a jury issue remained as to whether the contract was unenforceable because it furthered an illicit sexual relationship. The executors challenge the court's order on several bases, contending they were entitled to summary judgment because the contract was defective, was void ab initio, or had been abandoned. The executors also argue the court erred in substituting them as parties because none reside in DeKalb County.

1. The executors contend the trial court erred in retaining jurisdiction of the case after it substituted the decedent's executors as the proper parties defendant, arguing that venue was no longer proper in DeKalb County because none of the executors resided there. Two of the executors live in Colorado; the third lives in Fulton County, Georgia, where the will is being probated. The executors correctly state that in cases involving a resident defendant and out-of-state defendants, venue is proper "in the county where a resident defendant is suable." OCGA § 9-10-93. In a case like this, involving claims of breach of contract, constructive trust, and an injunction of the probate proceedings, the Georgia Constitution requires that suit be brought in the county of the defendant's residence, Ga. Const., Art. VI, Sec. II, Par. VI, or in the case of an injunction to stay proceedings, "in the county where the proceedings are pending." OCGA § 9-10-30. Although the executors have correctly stated the black letter law with respect to venue upon commencement of a suit, that law does not resolve whether the instant substitution divests the court of venue that was proper when suit was filed.

When this suit was filed and service perfected, Abrams was alive and a resident of DeKalb County. Venue was proper and Abrams admitted this in his answer. It is axiomatic that "[v]enue will be determined as of the date of filing as long as service is subsequently perfected upon a defendant within a reasonable time period." (Citation and punctuation omitted.) *Perry v. Perry*, 245 Ga. 298 (264 SE2d 228) (1980). Even if a defendant moves out of state after suit is filed, venue remains proper in the county where he resided, e.g., *Franek v. Ray*, 239 Ga. 282, 285 (236 SE2d 629) (1977); *McLain Bldg. Materials v. Hicks*, 205 Ga. App. 767, 768 (423 SE2d 681) (1992). Thus, the fact that Abrams moved to Fulton County after the suit was filed would have been insufficient to divest the court of venue. The question, then, is whether his death divests the court of proper venue. We have found no recent Georgia cases precisely on point.

When a defendant dies, his legal obligations do not necessarily die with him. If they pass to his estate, the court may order an executor to represent the deceased and to resolve any legal claims against the estate. OCGA § 9-11-25 (a) (1).[1] An executor "is a quasi court officer" and has "the sacred duty of standing in the place of the deceased and administering his estate as directed." (Citation and punctuation omitted.) *Ringer v. Lockhart*, 240 Ga. 82, 84 (239 SE2d 349) (1977). Substituting an executor or administrator for the deceased party allows the suit to continue either by or against that deceased party. See *U. S. Fidelity &c. Co. v. Reid*, 268 Ga. 432, 433 (491 SE2d 50) (1997) (administrator and deceased defendant are essentially the same parties for purposes of renewal statute); *Wofford v. Central Mut. Ins. Co.*, 242 Ga. 338, 339 (2) (249 SE2d 21) (1978) ("[A] renewal suit by an administrator of a plaintiff is the same as a renewal suit by the plaintiff."). Substituting an executor keeps the action against the deceased alive; it does not, in and of itself, make the executor a party to the action in his or her individual capacity. *Coogler v. Berry*, 117 Ga. App. 614, 615 (161 SE2d 428) (1968) ("[A] person named as an executor is not individually a party to the action and he may not appeal [in his individual capacity] from a judgment entered adversely to the executor."); *Neiman-Marcus Co. v. Lait*, 17 FRD 119, 120 (S.D. N.Y. 1954) ("The effect of substituting the executrix is to continue the existing action against the testator and not to institute one against the executrix.").

Because the executor stands in the shoes of the decedent, in essence keeping the suit and claims against the decedent alive, we hold that the substitution of a nonresident executor is, for purposes of venue, qualitatively the same as when a resident defendant moves out of the county. Therefore, applying *Perry v. Perry*, 245 Ga. at 298, and *Franek v. Ray*, 239 Ga. at 285, we find that Abrams' death and the substitution of his executors did not divest the superior court of venue. See *Walton v. Gill*, 46 Ga. 600 (1872) (suit does not abate when deceased executor is replaced by nonresident executor). See also *Dolgow v. Anderson*, 45 FRD 470, 473 (E.D. N.Y. 1968) (substitution of nonresident bank as executor, even though venue statute would not have permitted bank to be sued in the district, did not oust federal court of its jurisdiction).

2. The executors contend the superior court erred in failing to address whether the contract to make a will was an unenforceable "agreement to agree." They argue the contract fails because Abrams and Massell did not state where they would continue to reside. This

---

[1] OCGA § 9-11-25 (a) (1) provides, in relevant part: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties."

assertion is not supported by the record. The contract specifically states that Abrams and Massell intended to live together in Massell's home "or at such other place or places as they shall mutually agree." Moreover, the contract was not contingent upon the parties' continued cohabitation in any specific place — it was not even contingent upon the parties' continued cohabitation. The contract expressly provided for the parties' obligations to each other if they elected to cease living together. This is not an agreement to agree because no essential term of the contract was left to further negotiation. *Kreimer v. Kreimer*, 274 Ga. 359, 363 (2) (552 SE2d 826) (2001).

3. The executors contend the contract was unenforceable because it lacked mutuality of obligations. They argue Massell and Abrams did not make promises of equal value because Massell was obligated to leave Abrams only that interest she "may own" in her home at the time of her death, whereas Abrams was required to leave her $400,000. Pretermitting whether these promises[2] lack mutuality, "[w]here there is any other consideration for a contract so that each promise does not depend upon the other for consideration, mutuality of obligation is not essential." (Citation, punctuation and emphasis omitted.) *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390) (1980). In this case, the contract recites ample consideration, including providing "a comfortable home life with shared expenses," settling "any claims either may have against the other, or their estates, by reason of their friendship and support during life," releasing "any right which she or he may have otherwise in the property of the other," and giving "[t]en ($10.00) Dollars and other good and valuable consideration." The contract recites adequate consideration; therefore, the agreement "is not illusory, and both parties are committed to a binding agreement." Id. at 819.

4. The executors contend the trial court should have found that the parties mutually abandoned the contract. The evidence adduced, however, does not give rise to such an inference. Massell did not consent in writing to Abrams' revised will; in fact, Abrams revised his will without her knowledge. Further, Massell did not sell her home until after Abrams left, made it clear he was not returning and would not be sharing living expenses, and breached the contract by drafting a new will that expressly revoked all prior codicils. Further, nothing in the contract or in Massell's will forbade her from selling her home. She was only required to leave Abrams any interest she "may own" in the home. The evidence does not warrant an inference that the par-

---

[2] Although the parties' wills contain different bequests, the central promise at issue in the contract is the same: the parties' mutual agreement not to change those bequests to each other absent the prior written consent of the other.

ties mutually assented to abandon the contract. See *Delli-Gatti v. Mansfield*, 223 Ga. App. 76, 81 (4) (477 SE2d 134) (1996).

The executors also point to an agreement that Abrams and Massell entered into in connection with the purchase of a condominium, contending it was either a novation of the original contract or evidence of a mutual intent to abandon it. As the trial court correctly found, this document is insufficient as a novation and does not evidence an intent to deviate from the terms of the original contract at issue. To be effective, the new contract must show the "four essential requisites of a novation: (1) [a] previous valid obligation, (2) the agreement of the parties to a new contract, (3) a mutual intention by the parties to substitute the new contract for the old one, and (4) the validity of the new contract." *Ga. Income Property Corp. v. Murphy*, 182 Ga. App. 101, 103 (1) (354 SE2d 859) (1987). The condominium contract fails as a novation because it does not reveal a mutual intention that it take the place of the contract to make a will. The new contract reveals only that both parties planned to keep living together and planned to continue sharing living expenses. It does not mention the previous agreement at all. Further, the fact that the parties made plans for the disposition of the condominium upon their deaths does not evidence an intention to abandon the previous contract because that action is not inconsistent with anything in the previous contract. After all, the previous contract provided that the parties intended to live together in Massell's home "or at such other place or places as they shall mutually agree." The trial court properly concluded the condominium contract is ineffective as a novation and reveals no intent to abandon the terms of the previous contract to make a will. See *Feely v. First American Bank of Ga.*, 206 Ga. App. 53, 56-57 (2) (b) (424 SE2d 345) (1992).

5. The executors contend the superior court erred in determining a jury issue remained as to whether the contract was unenforceable. The executors argued that the contract was in furtherance of an immoral relationship which renders the contract void ab initio. OCGA § 13-8-1;[3] *Rehak v. Mathis*, 239 Ga. 541 (238 SE2d 81) (1977). The "immorality" claimed in this case is an alleged "meretricious relationship." A meretricious relationship is one involving "unlawful sexual [connection] . . . or lack of capacity on the part of one party." Black's Law Dictionary (7th ed. 1999), p. 1002 (defining "meretricious"). Accord *Hathcock v. Hathcock*, 249 Ga. 74, 76 (3) (287 SE2d 19) (1982) (meretricious relationship is one "sustained by persons who contract a marriage that is void by reason of legal incapacity")

---

[3] OCGA § 13-8-1 provides, in relevant part: "A contract to do an immoral or illegal thing is void."

(citation omitted). Of course, fornication is no longer *illegal* since OCGA § 16-6-18 was found unconstitutional. *In re J. M.*, 276 Ga. 88, 89 (1) (575 SE2d 441) (2003). However, as long as binding precedent from the Supreme Court of Georgia continues to define sexual relationships between unmarried consenting adults as *immoral,* we must set aside contracts under OCGA § 13-8-1 that are founded upon or that are in furtherance of such relationships. See *Rehak v. Mathis,* 239 Ga. at 541; *Liles v. Still,* 176 Ga. App. 65-67 (2) (335 SE2d 168) (1985).

The contract at issue plainly does not require the parties to perform any illegal or immoral act nor is it founded upon such consideration. Although the contract provides that the parties shall maintain a joint residence, it does not describe their relationship as romantic or sexual, require that they share a bedroom, or require that they live together as husband and wife. Compare *Rehak v. Mathis,* 239 Ga. at 542, 543 (contract provided for services that could be construed as fornication, which was at the time illegal, thus implying the existence of a meretricious relationship). The contract describes the parties as "friends" who intended to provide each other with a "comfortable home with shared expenses" and "support during life." The contract also specifically provides that the "[a]greement contains the entire understanding of the parties with respect to their rights to the property and the estate of the other and no representations or promises in the premises have been made by either except as stated or contained herein." The contract as written contains sufficient legal consideration. See Division 2, supra. "[Thus, t]he parol evidence rule bars any attempt to contradict, vary or supplement the consideration stated in an integrated contract." *Crooke v. Gilden,* 262 Ga. 122 (2) (414 SE2d 645) (1992).

Although parol evidence is admissible under OCGA § 24-6-8 to demonstrate that a contract is nevertheless void as against public policy, none of the deposition testimony adduced demonstrates that the contract is void on the grounds alleged because "[n]othing in the contract casts upon either of the parties the responsibility to perform any illegal activity." *Crooke v. Gilden,* 262 Ga. at 123 (2). At most, the existence of any romantic or sexual involvement between the parties was, as a matter of law, "incidental to the contract rather than required by it." Id. Consequently, enforcement of the contract does not contravene OCGA § 13-8-1, and the trial court erred in holding that a jury issue remains with respect to this issue. Id. We therefore reverse the judgment in Case No. A03A1434 on this issue, but affirm the remainder of the order finding the contract valid and enforceable.

*Case No. A03A1435*

6. In her sole enumeration of error, Massell contends the trial court erred in refusing to enforce the contract on the ground that an issue of fact remained as to whether the contract was void under OCGA § 13-8-1 because it furthered an immoral purpose. For the reasons in Division 5, supra, we agree. We therefore reverse the judgment in Case No. A03A1435.

*Judgment affirmed in part and reversed in part in Case No. A03A1434. Judgment reversed in Case No. A03A1435. Blackburn, P. J., and Phipps, J., concur.*

DECIDED AUGUST 14, 2003 — 

*Pursley, Lowery & Meeks, Roy H. Meeks, Jr., Christian F. Torgrimson*, for appellants.

*Caldwell & Watson, Harmon W. Caldwell, Jr., Michael R. Merlino II*, for appellee.