## A08A2012. OWEN et al. v. WATTS.
### (674 SE2d 665)

BERNES, Judge.

This dispute involves the adoption of a minor child, M. F. L. Appellants Keith and Christine Owen, former foster parents of the child and interveners in the action below, appeal the trial court's order granting the adoption petition of appellee Kathy Watts, the child's maternal grandmother. For the following reasons, we reverse.

The facts that can be gleaned from the record before this Court are as follows. M. F. L. was born out of wedlock on March 8, 2000. In January 2005, the Rabun County Department of Family and Children Services ("DFCS") removed M. F. L. from her mother's custody and placed her into foster care with the Owens.[1] Both the child and her mother lived with Watts at the time that the child was removed; the child's mother later became incarcerated on drug charges and remained in prison for the duration of the proceedings at issue.

On October 2, 2006, the Owens filed a petition to adopt M. F. L., who was "thriving" in their care, according to the Court Appointed Special Advocate ("CASA"). On the following day, as a result of "serious issues" between DFCS and the Owens otherwise unexplained in the record, DFCS took the child for what was intended to be an overnight visitation with Watts and instead transferred custody of the child to Watts. In November 2006, the trial court entered a temporary custody order and temporary protective order in which it held that DFCS had acted improperly in removing the child without providing proper notice to either M. F. L. or the Owens

---

[32] *Hargett v. State*, 285 Ga. 82, 83 (3) (674 SE2d 261) (2009).

[1] The evidence in the record does not explain the circumstances surrounding M. F. L.'s removal and placement into DFCS custody.

450

and "without following the proper procedures to assure that [Watts] could provide a safe environment." The court therefore ordered that custody be returned to the Owens — "who DFCS ha[d] found to provide a safe environment for [the child]" — and enjoined DFCS from attempting to remove M. F. L. from the Owens' home until further order from the court. In December 2006, however, apparently in response to an emergency motion for an ex parte restraining order and motion for reconsideration filed by the guardian ad litem, the court entered an order restraining the Owens from retrieving M. F. L. from Watts.[2]

In April and May 2007, the court held a hearing on the guardian ad litem's motion for reconsideration.[3] Following the hearing, the court issued an order dated May 4, 2007 in which it stated that evidence had been presented that M. F. L. had done well in both the care of the Owens and Watts. The court's order specifically noted that it was disturbed by allegations of prior sexual abuse against M. F. L. by her older brother and her maternal uncle that had allegedly occurred while the child and her mother resided with Watts. The court nonetheless concluded that, because M. F. L. had been with Watts for seven months and "there [would] be additional court proceedings in the weeks and months to come that [could] again cause her to be uprooted," M. F. L. should remain in Watts's care. In recognition of the fact that both M. F. L.'s brother and her uncle had lived with Watts at different points in time, the court further ordered that neither should live with or have contact with M. F. L. and that, upon release from incarceration, M. F. L.'s mother should be allowed only supervised visitation with the child.

Watts filed the instant petition to adopt M. F. L. in July 2007, which the trial court determined included a valid surrender of parental rights from M. F. L.'s mother and legal father[4] in favor of Watts. The Owens successfully moved to intervene in the case.

The trial court held a hearing on Watts's petition, during which the sole evidence presented consisted of testimony from Watts and the admission of two documents through a DFCS records custodian.[5] In its order granting Watts's adoption petition, the trial court held that

---

[2] The record does not contain copies of the guardian's motions.

[3] The record does not contain a transcript of the hearing.

[4] The identity of M. F. L.'s biological father is unknown.

[5] It appears that the DFCS witness had substantive knowledge of M. F. L.'s case; however, the trial court limited his testimony to questions related to the admission of documents that Ms. Owen, acting pro se, had subpoenaed. Due to her lack of knowledge of the procedural rules of evidence, however, Ms. Owen succeeded in admitting only two documents into evidence — a report with an addendum from the CASA and a letter from a DFCS caseworker.

upon a consideration of the physical, mental, emotional, and moral condition and needs of the minor child, especially considering the need for a secure and stable home with a biological relative, the [c]ourt finds by clear and convincing evidence that it is in the best interest of said child that this adoption be granted.

The court specifically acknowledged that the Owens had previously filed an adoption petition for M. F. L. that remained pending, and stated that it was not considering their petition at that time.[6]

In an adoption proceeding,

the court considers whether: (1) each living parent of the child has surrendered or had terminated all his rights to the child in the manner provided by law;[7] (2) the adopting parent is capable of assuming responsibility for the care, supervision, training, and education of the child; (3) the child is suitable for adoption in a private family home; and (4) the adoption requested is for the best interest of the child.

*Madison v. Barnett*, 268 Ga. App. 348, 349 (1) (601 SE2d 704) (2004). See OCGA § 19-8-18 (b). Since the trial court sits as both the judge and jury, it is vested with broad discretion to determine whether the adoption petition is in the best interest of the child, and we will accept the trial court's decision if there is any evidence to support it. *Rokowski v. Gilbert*, 275 Ga. App. 305, 306 (2) (620 SE2d 509) (2005).

Here, we take the rare step of reversing the trial court's grant of Watts's adoption petition because there was no record evidence that supported a finding that the adoption was in the best interest of the child. Indeed, the only evidence favorable to Watts was her own

---

[6] Relying on *Watkins v. Minton*, 98 Ga. App. 328 (105 SE2d 908) (1958), the Owens assert that Watts could not collaterally attack their previously filed adoption petition and the trial court erred in allowing the latter petition to supercede their pending petition. Watts argues that, because DFCS was a named party to the Owens' petition, that action involved different parties and thus Watts was not collaterally estopped from pursuing a separate action. See *In re T. M. G.*, 275 Ga. 543, 544-545 (570 SE2d 327) (2002). We cannot consider this issue because our record does not contain a copy of the Owens' adoption petition.

[7] Although the trial court does give consideration to a surrender of parental rights in favor of a relative, the surrender is not in itself determinative on the ultimate issue of whether an adoption petition should be granted, which remains governed by the best interest of the child analysis. *Madison v. Barnett*, 268 Ga. App. 348, 350 (1) (601 SE2d 704) (2004). Cf. *Stills v. Johnson*, 272 Ga. 645, 649 (2) (533 SE2d 695) (2000). We note, however, that the Georgia Code also provides that, after a child has been placed with a foster family for 12 months, the foster parents have "[t]he right to be considered, where appropriate, as the first choice as . . . permanent . . . parents for a child" who has been released for adoption. OCGA § 49-5-281 (a) (20).

YALE LAW LIBRARY

testimony that she loved the child, that she took the child to a six-month doctor's visit, and that DFCS had indicated that the size of her current home would not cause her to fail a home evaluation. Cf. OCGA § 19-8-11 (a) (noting in the context of a termination hearing that the best interest analysis must consider "the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home"). Although Watts's testimony might support a finding that she is capable of assuming responsibility for the child's care, it is not sufficient evidence, in and of itself, to support a conclusion that Watts's adoption of the child is in the child's best interest. See *McCollum v. Jones*, 274 Ga. App. 815, 824-826 (3) (b) (619 SE2d 313) (2005) (reversing trial court's order granting an adoption in part because the evidence was insufficient that adoption was in the best interest of the child). Compare *In the Interest of B. A. S.*, 254 Ga. App. 430, 444 (12) (563 SE2d 141) (2002) (best interest evidence included evidence that petitioners maintained a close bond with the child and made efforts to maintain a relationship with and financially support him even when he was not in their custody, lived in a positive and nurturing environment and were actively engaged in their community, had two other children who had a good relationship with the child, and attempted to foster a positive relationship with intervener); *Matherly v. Kinney*, 227 Ga. App. 302, 302-305 (1), (3) (489 SE2d 89) (1997) (grant of adoption petition supported by positive evidence and testimony presented from petitioners, a hospice volunteer, the guardian ad litem, and the family court investigator). See also *Albright v. Peterson*, 247 Ga. App. 203, 204-205 (2) (539 SE2d 919) (2000). This determination is particularly true in light of the fact that a plethora of evidence was presented from which the trial court could have concluded that an adoption by Watts was not in M. F. L.'s best interest.

Under these circumstances, we must conclude that the trial court erred in granting Watts's petition for adoption.[8] See OCGA § 19-8-18 (b); *McCollum*, 274 Ga. App. at 824-826 (3) (b).[9]

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 5, 2009.

Christine Owen, *pro se.*

---

[8] The Owens request that we further reverse the trial court's May 4, 2007 order in which it ruled, upon reconsideration, that M. F. L. should remain in Watts's care despite the fact that DFCS had improperly removed the child from the Owens' home. That we cannot do; the May 4, 2007 order is not the order on appeal.

[9] Watts's motion for attorney fees is denied.

Keith Owen, *pro se*.
*Merlinus G. Monroe*, for appellee.