**FIFTH DIVISION
MCFADDEN, P. J.,
MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**April 12, 2019**

# In the Court of Appeals of Georgia

A19A0239. MORGAN et al. v. MORGAN.                     McF-010

MCFADDEN, Presiding Judge.

The grandparents of 13-year-old J. P. appeal the order awarding custody to his mother. The grandparents argue that the trial court erred by placing the burden of proof upon them, given that they are J. P.'s de facto parents, but the court properly required them to prove that awarding them custody was in J. P.'s best interests. The grandparents also challenge the sufficiency of the evidence, but the evidence supports the trial court's decision. So we affirm.

1. *Factual background.*

The trial court found the following facts in its final order and in its order denying the grandparents' motion for new trial and motion for reconsideration. See *Strickland v. Strickland*, 298 Ga. 630, 633-634 (1) (783 SE2d 606) (2016).

The grandparents have been the primary custodians of J. P. for most of his life, but the parties contemplated the eventual return of custody to his mother. In 2008, the parties, along with J. P.'s now-deceased father who was the grandparents' son, entered a consent order that awarded custody of J. P. to the grandparents. The order expressly stipulated that, "[a]t such time as [the mother and the now-deceased father] are physically and mentally able to care for J. P., they may [p]etition . . . for a hearing and change of custody." In 2014 (by which time the father had died), the parties entered another consent order, agreeing to share joint legal custody and to allow the mother significant visitation with the child. The trial court found that these orders demonstrated the parties' intent that the mother could eventually regain custody.

The trial court found that after the entry of the 2008 consent order, the mother began making changes to qualify her to regain custody. She is employed and has a stable home. She has visited J. P. regularly for years and has been a fit parent for J. P.'s sister — who is the grandparents' granddaughter. According to the trial court, the mother indicated that, if awarded custody, she would ensure that J. P. is able to continue participating in Scouting and other activities he enjoys.

The trial court found that J. P. has unique psychological needs. The court specified that he has experienced stress and discomfort because of the lack of

certainty about his custody; that the risk of him experiencing emotional harm due to a significant change in his circumstances is elevated; that he has received treatment from mental health professionals to help him cope with stressful family situations and with the trauma he experienced; and that as long as he continues to receive this treatment, the risk of emotional harm is substantially mitigated. The mother has contacted the mental health professionals treating J. P. to find appropriate professionals to take over his treatment, given the distance between the professionals already treating J. P. and her residence. The court found that either party, so long as they continue with recommended treatment for J. P., is capable of meeting his needs. The court concluded that the mother is a fit parent and that if custody were returned to her, J. P. would not suffer either physical harm or significant, long-term emotional harm.

2. *Burden of proof.*

The grandparents argue that the trial court erroneously placed the burden of proof upon them. They rely on *Durden v. Barron*, 249 Ga. 686 (290 SE2d 923) (1982), in which our Supreme Court ruled that, "Where a parent was a party to a proceeding in which his or her right to custody was lost and custody was permanently

3

awarded to a third party, the parent does not have a prima facie right to custody." Id. at 686 (1). The court elaborated that:

> [o]nce a third party has been awarded permanent custody of a child in a court proceeding to which a parent was a party, the roles of the parent and the third party reverse; that is, the third party now has the prima facie right to custody as against the parent who has lost the right to custody. The parent can regain custody upon showing by clear and convincing evidence his or her present fitness as a parent and that it is in the best interest of the child that custody be changed.

Id. at 686 (2).

> Generally, however,

> child-custody disputes involving a biological parent and a limited number of third parties who are related to the child, including grandparents, are governed by OCGA § 19-7-1 (b.1) (in accordance with the fundamental constitutional right of familial relations), which provides: [I]n any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable

4

presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

*Brawner v. Miller*, 334 Ga. App. 214, 215 (1) (778 SE2d 839) (2015) (citation omitted). "The *Durden* standard[, under which the roles of the parent and the third party reverse,] applies where there has been a permanent award of custody to the third party made pursuant to an evidentiary hearing with specific findings by clear and convincing evidence of present parental unfitness." *Lopez v. Olson*, 314 Ga. App. 533, 539 (3) (724 SE2d 837) (2012) (citation omitted). In this case, there has been no such permanent award of custody to the grandparents made after an evidentiary hearing with specific findings of present parental unfitness. So the trial court properly applied the standard of OCGA § 19-7-1 (b.1).

Under that standard, to overcome the presumption that it is in J. P.'s best interest to award custody to his mother, the grandparents were required to show by clear and convincing evidence that J. P. will suffer either physical harm or significant, long-term emotional harm if custody were awarded to the mother. See *Clark v. Wade*,

273 Ga. 587, 598-599 (IV) (544 SE2d 99) (2001). In deciding whether the grandparents had met this burden, the trial court was required to

> consider the parental needs and the circumstances of the child in question, including (1) who are the past and present caretakers of the child or children; (2) with whom has the child or children formed psychological bonds and how strong are these bonds; (3) have the competing parties evidenced interest in, and contact with, the child or children over time; and (4) are there any unique medical or psychological needs of the child or children.

*Strickland*, 298 Ga. at 631 (1) (citation omitted).

In the final order and the order denying the motion for new trial or for reconsideration, the trial court correctly set out the above law, made findings of fact, applied these findings to the factors identified by our Supreme Court, and concluded the grandparents had not established by clear and convincing evidence that J. P. will suffer either physical harm or significant, long-term emotional harm if custody were awarded to the mother. See *Strickland*, 298 Ga. at 632 (1).

The grandparents argue that there had been a finding of unfitness in a juvenile court action, so under *Durden*, 249 Ga. 686, the trial court should have reversed the roles, determined that the grandparents had the prima facie right to custody, and found that the mother was required to show by clear and convincing evidence that it

6

was in J. P.'s best interest to change custody to her. But the grandparents do not point to any order awarding them permanent custody because of specific findings of parental unfitness. They point only to the order in this case denying their motion for new trial and motion for reconsideration. In that order, the superior court referenced a juvenile court order that awarded temporary legal and physical custody of J. P. to the grandparents because, according to the superior court here, of a "finding of parental unfitness at the time." The juvenile court order is not in the appellate record. But the superior court expressly found "that there [had been] no permanent award of custody made pursuant to an evidentiary hearing finding parental unfitness."

3. *Per se rule*.

The grandparents urge us to hold that the facts of this case should result in a per se bar of custody transfer, because they have had physical custody of J. P. since his birth, except for a three-month period when he was an infant.. We cannot do so because

> determining what laws are necessary and proper for the welfare of this [s]tate is a function constitutionally vested in the General Assembly, and not the judiciary. Ga. Const. of 1983, Art. III, Sec. VI, Par. I. Moreover, the General Assembly is the proper authority for announcing the public policy of this [s]tate. The General Assembly has carried out both these functions regarding [custody] by enacting the laws which have been

codified in Chapter [7] of Title 19 of the Official Code of Georgia Annotated[.]

*In re Goudeau*, 305 Ga. App. 718, 723 (700 SE2d 688) (2010) (citations omitted).

4. *The evidence supports the award*.

The grandparents argue that the evidence does not support the trial court's award of custody to the mother. We disagree.

We review the evidence in the light most favorable to the trial court's decision that the grandparents have not rebutted by clear and convicting evidence the statutory presumption in favor of awarding custody to the mother. *Strickland*, 298 Ga. at 635 (2). Given the evidence presented, we find the superior court was authorized to conclude that the grandparents have not demonstrated by clear and convincing evidence that an award of custody to them would be in J. P.'s best interests.

*Judgment affirmed. McMillian and Goss, JJ., concur*.