**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2025**

# In the Court of Appeals of Georgia

A24A1838. PIERCE et al. v. BAILEY et al.

HODGES, Judge.

In the second appearance of this case in this Court, foster parents Lola and A. J. Pierce appeal an order of the Superior Court of Floyd County granting the petition to adopt A. B., a minor, filed by A. B.'s great-grandparents, Patricia Ann and Ronald Marcel Bailey. The Pierces contend that the Baileys were not legally qualified to file an adoption petition because A. B. had never been physically "placed" in their care pursuant to OCGA § 19-8-3 (a) (3) (B) and that the adoption by the Baileys was not in A. B.'s best interests. However, we need not address these issues because we conclude that the Pierces lack standing to object to A. B.'s adoption. Therefore, we affirm.

The facts of this case are undisputed and were stated in *Pierce v. Bailey*, 367 Ga. App. XXVII (April 24, 2023) (unpublished):

A. B. was born on August 12, 2019. Patricia Bailey traveled to Georgia from her home in Alabama in order to be present for his birth. Shortly thereafter, the Floyd County Department of Family and Children Services ("DFCS") took custody of A. B. because he tested positive for drugs at birth. After DFCS determined that there were no suitable Georgia relatives for immediate placement of A. B., the Great-Grandparents [Patricia and Ronald Bailey] offered to move into a Georgia home with other relatives in order to care for A. B. while his mother attempted to become sober and drug-free. DFCS declined the Great-Grandparents' offer after discovering that the Georgia residents of the home they planned to inhabit had unsuitable criminal histories.

Ultimately, A. B. was placed with the Foster Parents [Lola and A. J. Pierce] when he was released from the hospital. At that time, DFCS informed the Foster Parents that the Great-Grandparents had expressed interest in becoming approved for the permanent placement of A. B. On September 18, 2019, DFCS filed paperwork and a diligent search affidavit with the Floyd County Juvenile Court that further noted the Great-Grandparents' interest in placement.

Although the initial September 2019 permanency plan developed by DFCS contemplated reunification of A. B. with his mother, in January 2020, the case plan was modified to be a concurrent case plan that also

included termination. After being notified of the updated case plan, the Great-Grandparents informed DFCS in April 2020 that they wished to move forward with the process of becoming an improved placement for A. B. at their home in Alabama pursuant to the Interstate Compact on the Placement of Children ("ICPC"), see OCGA § 39-4-4, and DFCS sent an ICPC referral to the Alabama Department of Human Resources ("ADHR").

In May 2020, DFCS notified the Foster Parents that an ICPC referral had been sent to ADHR, and, in November 2020, the Foster Parents were informed that Alabama had given verbal approval for A. B.'s placement in the Great-Grandparents' Alabama home. The Foster Parents were also told that a visitation schedule for the Great-Grandparents with A. B. would be imposed in order to facilitate the transition of A. B. to his Great-Grandparents. In December 2020, visitation began, but the Foster Parents were largely uncooperative with the schedule. By May 2021, the Great-Grandparents were formally approved for A. B.'s placement in Alabama.

On August 4, 2021, A. B.'s mother surrendered her parental rights to the Great-Grandparents, and, one week later, DFCS filed a Notice of Change of Placement to transfer custody of A. B. to the Great-Grandparents. On August 20, 2021, the Great-Grandparents filed a petition to adopt A. B. pursuant to OCGA § 19-8-7. A. B.'s mother was not married at the time of A. B.'s birth, and the Great-Grandparents' petition seeks to terminate the unknown biological father's rights in

accordance with OCGA § 19-8-10 (a). Subsequently, on January 7, 2022, the Foster Parents filed a dueling Petition for Adoption and Termination of Parental Rights pursuant to OCGA § 19-8-5 and OCGA § 19-8-10.

On March 30, 2022, the Great-Grandparents filed a "Motion to Intervene and Objection / Motion to Dismiss Petition for Adoption" filed by the Foster Parents. The Great-Grandparents argued that the Foster Parents' petition had to be dismissed because the Foster Parents had no standing under the circumstances of this case. After a hearing, the trial court determined that the Great-Grandparents had a right to intervene, and it granted their motion to dismiss the Foster Parents' petition to adopt due to a lack of standing.

(Footnotes omitted.) We affirmed the trial court's order in an unpublished opinion.

On remittitur, with the Pierces' petition for adoption dismissed, the trial court turned to a consideration of the Baileys' adoption petition. The Pierces renewed a previously-filed motion to dismiss or, in the alternative, to deny the Baileys' petition, which the trial court denied in a July 31, 2023 order. In its order, the trial court concluded that the Pierces do not have standing to object to the Baileys' adoption petition. The Pierces did not pursue appellate review of this order.

Following an April 2, 2024 hearing, the trial court entered an extensive order on April 8, 2024, terminating the biological mother's and the putative father's

parental rights to A. B. and granting the Baileys' adoption petition. The Pierces' appeal followed.

1. In two enumerations of error, the Pierces contend that the trial court erred in granting the Baileys' adoption petition because they were not legally qualified to adopt A. B. under OCGA § 19-8-3 and because the evidence was insufficient to show that the adoption by the Baileys was in A. B.'s best interests. However, we do not reach these arguments as the Pierces lack standing to challenge A. B.'s adoption.

It is well settled that Georgia law does not afford any right to a foster parent to adopt children in their care. See *Drummond v. Fulton County Dept. of Family and Children Svcs.*, 237 Ga. 449, 454 (1) (228 SE2d 839) (1976), overruled in part on other grounds, *Boozer v. Higdon*, 252 Ga. 276 (313 SE2d 100) (1984). In that vein, our Supreme Court explained, in a case holding that foster parents had no standing to contest an agency's refusal to consent to their adoption of a minor, that

> [t]he Fourteenth Amendment protects life, liberty and property interests from undue interference by the state. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

(Citation, punctuation, and footnote omitted.) *Drummond*, 237 Ga. at 452, 454 (1). See, e.g., *Poe v. Cantrell*, 361 Ga. App. 607, 612 (863 SE2d 405) (2021) (noting, in case holding that foster parents do not have standing to challenge trial court's paternity determination, authority that "non-relative foster parents had no standing to petition for sole custody of a child of an incarcerated mother when the mother had not lost her right to custody").

Similarly, a foster parent who is not a relative of the child lacks standing to challenge an adoption by a relative of the child. See OCGA § 19-8-15 (establishing parameters for objections to adoption, including requirement that objecting party be a "family member"); *Kelly v. Silverstein*, 207 Ga. App. 381, 382 (427 SE2d 851) (1993) ("One who objects to the adoption proceeding must establish a blood relationship to the child.") (citation and punctuation omitted). See also *Owen v. Watts*, 303 Ga. App. 867, 868 (1) (695 SE2d 62) (2010) (noting that "a child may be adopted by a third party who is neither the stepparent nor relative of the child only if each such living parent has voluntarily and in writing surrendered his rights to the child to that third person for the purpose of enabling that person to adopt the child") (emphasis omitted). At most, a foster parent is entitled "to be considered, where appropriate, as

6

the first choice as a permanent parent or parents for a child who, after 12 months of

placement in the foster home, is released for adoption or permanent foster care" as

part of the Foster Parents Bill of Rights. OCGA § 49-5-281 (a) (20).[1] See also *Owen*,

303 Ga. App. at 868 (2) (observing that the Foster Parents Bill of Rights "says nothing

about foster parents' legal rights regarding adoption"). It necessarily follows that the

Pierces, as foster parents who are not related to A. B. yet who expressed an interest

in adopting A. B., no matter how earnest, lack standing to object to A. B.'s adoption

---

[1] The Foster Parents Bill of Rights does not include a provision granting foster parents standing to adopt children in their care. Even so, the Pierces had an administrative remedy to address any issues with application of the Foster Parents Bill of Rights. See OCGA § 49-5-281 (c); *Owen*, 303 Ga. App. at 868-869 ("[F]oster parents alleging any violation of the [Foster Parents Bill of Rights] have the right to file a grievance with the Department of Human Services.").

by the Baileys.[2] We therefore affirm the trial court's order granting the Baileys' petition to adopt A. B.

2. In view of our conclusion that the Pierces lack standing, we next consider whether a penalty for a frivolous appeal is warranted. For the following reasons, we conclude that such a penalty is appropriate.

Throughout its order granting the Baileys' adoption petition, the trial court highlighted the Pierces' evasiveness and recalcitrance in participating in the adoption

---

[2] *Owens v. Watts*, 296 Ga. App. 449 (674 SE2d 665) (2009) does not require a different result. Critically, the foster parents in Owens were permitted by the trial court to intervene in an adoption petition filed by the child's maternal grandmother. Id. at 449, 450. Here, the Pierces have not cited an order from the trial court allowing them to intervene in the Baileys' adoption petition, and our review of the trial court record has revealed no such order. In fact, the trial court denied the Pierces' motion in which they sought to dismiss the Baileys' petition or, in the alternative, to intervene. See *In the Interest of Baby Girl N.*, 362 Ga. App. 253, 255 (1) (867 SE2d 853) (2022) ("Whether permissive intervention is granted is addressed to the sound discretion of the trial judge, and a decision on this issue will not be reversed unless there is an abuse of discretion.") (citations and punctuation omitted). In that order, the trial court noted that "when foster parents are allowed to intervene as a party to the adoption, they merely have the right to be considered, where appropriate, as the first choice as a permanent parent for a child who has been released by the Department after twelve (12) months of placement in the foster home." (Punctuation omitted.) See OCGA § 49-5-281 (a) (20) (codifying foster parents' right "to be considered, where appropriate, as the first choice as a permanent parent or parents for a child who, after 12 months of placement in the foster home, is released for adoption or permanent foster care" as part of the Foster Parents Bill of Rights). The Pierces neither appealed that order nor raised that issue on appeal in this case.

review process. Of particular note, under a heading entitled "Other Factors Considered by the Court to be Relevant and Proper[,]" the trial court stated:

> In this case, the [Pierces] have clearly engaged in great efforts to prevent adoption by [the Baileys] to whom the birth mother surrendered her parental rights. The [Pierces'] actions alone are responsible for the delay. But for the actions of the [Pierces], [A. B.] would have been transitioned into [the Baileys'] home beginning in August of 2021, when he was two years old.
>
> In addition, this court is concerned about the evasiveness of [the Pierces] in answering questions about their ability to financially support, what goes on in their home and their refusal to allow anyone inside their home.
>
> There is no evidence that [A. B.] is unsafe or suffers from any type of abuse in [the Baileys'] home. [The Baileys] have willingly opened their home for inspection and scrutiny at all times.

After the trial court's April 8, 2024 order, the Pierces continued their efforts by filing an emergency motion in this Court to stay enforcement of the trial court's order. See *In re Adoption of A. B., a Child*, No. A24E0062 (April 18, 2024). We denied the Pierces' motion on April 18, 2024.

Given the Pierces' pattern of behavior as outlined by the trial court, coupled with the trial court's unappealed order that the Pierces lack standing and our decision

9

in this case making clear — once again — that the Pierces lack standing, we conclude that the Pierces could not have reasonably anticipated reversal by this Court. See *Murphy v. Murphy*, 328 Ga. App. 767, 774 (4) (759 SE2d 909) (2014). Therefore, we exercise our inherent power to impose a frivolous appeal penalty against the Pierces, jointly and severally, in the amount of $1,000. See Court of Appeals Rule 7 (e) (2) ("The panel of the Court ruling on a case, with or without motion, may by majority vote to impose a penalty not to exceed $2,500 against any party and/or a party's counsel in any civil case in which there is a direct appeal . . . that is determined to be frivolous."); see, e.g., OCGA § 5-6-6; *Vaughn v. Roberts*, 282 Ga. App. 840, 841 (640 SE2d 293) (2006) ("An appeal is frivolous if it is filed only to delay the enforcement of the trial court's judgment. Delay can be assumed where an appeal lacks merit. *If an appellant knew or should have known that an appeal was ill-founded, sanctions should issue*.") (citation and punctuation omitted; emphasis supplied). This penalty shall constitute a money judgment in favor of Patricia Ann and Ronald Marcel Bailey against Lola and A. J. Pierce, jointly and severally, and the trial court is directed to enter judgment in such amount upon return of the remittitur in this case. See Court

of Appeals Rule 7 (e) (3) ("Upon filing of the remittitur in the trial court, the penalty may be collected as are other money judgments.").

*Judgment affirmed. Doyle, P. J., and Watkins, J., concur fully in Division 1 and in the judgment only in Division 2.*