**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 4, 2015**

# In the Court of Appeals of Georgia

A14A1577. STRICKLAND v. STRICKLAND et al.

MILLER, Judge.

Following a bench trial, the superior court granted permanent custody of three minor children to their maternal grandparents. The children's mother appeals from the denial of her motion for new trial, contending, inter alia, that the evidence is insufficient to support the superior court's order depriving her of her right as a parent to the care and custody of her children. After a thorough review, we find that the grandparents have not proven by clear and convincing evidence that the children will suffer either physical or significant, long-term emotional harm if they are placed in the mother's custody. Accordingly, we reverse the grant of permanent custody to the grandparents.

In a custody dispute between a parent and a third-party relative, there is "a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child." OCGA § 19-7-1 (b.1). A third-party relative may overcome this statutory presumption only by showing, with clear and convincing evidence, that the children will suffer either physical or significant, long-term emotional harm if custody is awarded to the parent. See *Clark v. Wade*, 273 Ga. 587, 598-599 (IV) (544 SE2d 99) (2001). When reviewing a superior court's custody ruling, we view the evidence in the light most favorable to the trial court's decision. See *Whitehead v. Myers*, 311 Ga. App. 680, 688 (1) (716 SE2d 785) (2011).

So viewed, the evidence showed that the mother's oldest daughter, C. S., was born in September 1998; her son, L.T., was born in July 2000; and her youngest daughter, I. S., was born in August 2006.[1] The grandparents first obtained temporary emergency custody of the children in 2006 after the home which the mother shared with I. S.'s biological father was raided by police. In October 2008, the juvenile court found that all three children were deprived and, with the mother's consent, the court

---

[1] The children's fathers are not parties to this appeal.

extended the grandparents' temporary custody of the children through July 2010, with supervised visitation for the mother.

Shortly before the 2008 temporary custody order expired, the grandparents filed a petition in the juvenile court for appointment as the children's permanent guardians. After expiration of the temporary custody order and while their guardianship petition in the juvenile court was still pending, the grandparents filed their petition for permanent custody in the superior court.[2] The grandparents also simultaneously sought an emergency ex parte custody order in the superior court. In the resulting ex parte order, the Paulding County Superior Court awarded the grandparents temporary custody of the children and set a hearing date for a final custody determination.

Prior to the scheduled hearing, however, the case was transferred to the Cobb County Superior Court based on the parties' agreement that Cobb County was the appropriate venue. The Cobb County Superior Court granted the mother's requests for visitation over Christmas 2011 and pending resolution of the main case. The superior court also set the case for a February 2013 bench trial.

---

[2] The juvenile court dismissed the grandparents guardianship petition in July 2011, after the grandparents filed their petition for permanent custody.

At trial, the GAL described the entire family as "a dysfunctional nightmare," noting that the grandparents are estranged from their other daughter and her children.[3] Nevertheless, the GAL recommended that the children continue living with the grandparents, at least temporarily, primarily because she was concerned that any abrupt custody change would affect the children's well being and believed that the whole family would benefit from therapy.

The grandparents have been the subject of the Division of Family and Children Services ("DFCS") investigations as to their care of the daughter and now her children. When the mother was a child, the grandparents frequently whipped her with a paddle and a belt. The grandfather also threw the mother against a wall and spat in her face. On one occasion, DFCS temporarily removed the mother from the grandparents' house after a family friend reported them for abuse. The grandfather also hits the children with a paddle, and he used to hit L. T. with a belt. In 2011, the grandfather beat L. T. leaving marks on his arms and resulting in a DFCS investigation and the temporary removal of L. T. from the grandparents' home.

---

[3] The grandparents have not seen their other daughter and her children for more than six years, even though they live near one another.

As to the mother's housing situation, the evidence showed that, except for a couple of months when she lived with a friend, the mother has been consistently living at the same residence with her fiancé for more than four years. During the relevant time period prior to the bench trial in this case, the children have visited the mother at her residence and have stayed there with her for summer vacations, spring break, weekends, and holidays.

The mother is not without her issues. She was diagnosed with bipolar disorder and has a history of drug use, including a former addiction to marijuana and experimentation with other drugs. In 2010, the mother was convicted of reckless driving in connection with her marijuana use. Since that time, however, the mother has attended court-ordered substance abuse counseling and additional counseling. She has passed all five of her drug screens since November 2012 and, according to her counselor, she is currently drug free.

With regard to income, the mother testified that she works from home, doing collections work. Also, as the grandfather acknowledged, the mother and her sister each own a 49-percent interest in a limited family partnership. The grandfather owns the remaining two percent and manages the partnership. Although the partnership

earns approximately $6,600 in monthly income, the grandfather does not distribute any of the income to the mother or her sister.

During the mother's visits with the children, she is attentive and loving. The mother interacts with each child individually, engages them in activities and conversation based on their interests, and assists them with their homework. The children enjoy their visits with the mother and would like to see her more. The mother also wants to spend more time with the children, but the grandparents have severely limited her visitation rights.

As to the children's mental health needs, the evidence showed that I. S. was diagnosed with adjustment disorder and has demonstrated emotional reactivity, insecurity, and episodes of defiance, likely as a result of the stresses associated with the custody dispute. C. S. was also diagnosed with adjustment disorder and has demonstrated anxiety as to her relationship with her mother.

Of the three children, L. T.'s needs are the most complex. He has been consistently defiant, self-critical, and defensive, and, at almost thirteen years old, he still struggled with bed-wetting and loose bowels. The mother testified that L. T. did not have incontinence problems when he visited overnight with her. L. T. has been formally diagnosed with moderate depression, and requires therapy and possibly

medication to treat his depression. He also needs a nurturing and supportive home atmosphere where he can feel safe verbalizing his frustrations without fear of punishment, a set routine, clearly defined rules, and continued access to extracurricular activities.

After the trial, in November of 2013, the superior court awarded permanent custody of all three children to the grandparents, with provisions for the mother to have unsupervised visitation on alternating weekends, as well as two weeks each summer. In its order, the superior court found that the children will suffer long term emotional harm if they are placed in their mother's custody, and that permanent placement with their grandparents is in their best interest. After the superior court denied her motion for new trial , the mother filed this appeal.[4]

1. The mother contends that the evidence is insufficient to support the superior court's order depriving her of her right as a parent to the care and custody of her children. Specifically, the mother argues that there is no clear and convincing

---

[4] The mother filed an application for discretionary review, which this Court granted because judgments and orders that award, modify or refuse to change child custody are directly appealable.

evidence that the children will suffer significant, long-term emotional harm if they are placed in her custody.[5] We agree.

Parents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children. The parental right to custody is "a fiercely guarded right that should be infringed upon only under the most compelling circumstances." (Punctuation and footnote omitted.) *Clark*, supra, 273 Ga. at 596-597 (IV). Accordingly, Georgia courts are not permitted to terminate a mother's natural right to custody of her children merely because the children might have better financial, educational or moral advantages elsewhere. See *Harris v. Snelgrove*, 290 Ga. 181, 182-183 (2) (718 SE2d 300) (2011). Moreover, as set forth above, the mother in this case has a statutory right to custody of her children in preference to the grandparents, unless the grandparents have proven by clear and convincing evidence that the children will suffer either physical or significant, long-term emotional harm if custody is awarded to the mother. See id.; see also *Clark*, supra, 273 Ga. at 598 (IV). We conclude that the grandparents failed to present

_____

[5] The mother also argues that there was no evidence that the children would suffer physical harm in her custody. The superior court found only that the children would suffer long-term emotional harm, not physical harm, if the mother was awarded custody.

8

sufficient evidence to overcome the mother's presumptive right to custody of her children.[6]

In granting permanent custody to the grandparents, the superior court specifically found that the mother had no present income and that her home with her fiancé was not a stable environment. The superior court also found that the children have resided exclusively with the grandparents since 2006; the children have bonded with the grandparents; the mother's interest in the children since 2006 has been sporadic at best; and the children have unique psychological issues that only the grandparents have addressed.

Contrary to the superior court's findings, the evidence showed that the mother has rectified those issues that led to her temporary loss of custody of her children. Notably, the mother has a job working from home and is also entitled to a share of the $6,600 monthly income earned by the family partnership. The mother also has a stable home with her fiancé where the children are welcome, she has completed substance abuse treatment and passed her drug tests, she is receiving treatment for her

---

[6] We conclude that the grandparents failed to overcome the mother's presumptive right to custody; therefore, we need not determine whether the grandparents demonstrated that a permanent award of custody to them would be in the children's best interest. See *Harris*, supra, 290 Ga. at 183 (2).

bipolar disorder and she has maintained a strong bond with her children. The evidence also showed that the mother is attentive and loving during her visits with the children, and they wish to spend more time with each other. Therefore, the evidence showed that the mother is strongly bonded with the children, and can provide a stable environment for them.

While the evidence showed that the children have also bonded with their grandparents and that the grandparents have been somewhat attentive to the children's needs while in their care, these circumstances are not the "most compelling circumstances" justifying termination of the mother's constitutional and statutory right to custody of her children. Further, while the record includes ample evidence of the children's mental health needs, none of this evidence established that they will suffer significant, long-term emotional harm if they are placed in the mother's custody. Although the children may experience stress and anxiety over the move, that is not the kind of harm that is sufficient to rebut the presumption in favor of parental custody. "[A] change in home and school will often be difficult for a child, but some level of stress and discomfort may be warranted when the goal is reunification of the child with the parent." (Citation omitted.) *Clark*, supra, 273 Ga. at 598 (IV).

10

Moreover, the children's counselor testified that, more than a change in custody itself, it would be an abrupt change that would cause harm.

There is also no evidence that the mother will fail to address the children's psychological issues if she is the children's primary custodian. Although the grandparents, as the children's temporary custodians, have brought the children to counseling, no evidence showed that the mother is unwilling to do the same. Indeed, the mother's willingness to attend counseling for herself suggests that she is likely to address those issues for the children.

Moreover, there is no evidence that the mother will fail to provide the type of environment the children need. L. T., in particular, needs an environment where he can express himself without fear of punishment, and there is no evidence that he – or any of the children – fear punishment from their mother. There is evidence, however, that the grandfather regularly engages in unreasonable, excessive corporal punishment, and that L. T. has experienced significant emotional challenges while in the grandparents' custody.

Under these circumstances, we conclude that the grandparents have failed to overcome the statutory presumption that the mother has the right to custody of her children. The evidence showed that the problems with the mother have been resolved

11

such that the grandparents have not proven by clear and convincing evidence that the children will suffer either physical or significant, long-term emotional harm if custody is awarded to the mother. See *Clark*, supra, 273 Ga. at 598-599 (IV) (requiring stringent burden of proof for grant of custody to third party); *Burke v. King*, 254 Ga. App. 351, 354 (562 SE2d 271) (2002) (reversing grant of custody to maternal aunt in absence of clear and convincing evidence that child would suffer significant long-term emotional harm in father's custody). Consequently, we reverse the trial court's grant of permanent custody to the grandparents and remand this case for further proceedings not inconsistent with this opinion.

2. In light of our holding in Division 1 above, we need not address the mother's remaining enumerations of error.

*Judgment reversed and remanded. Doyle, P. J., and Dillard, J., concur*