In the Supreme Court of Georgia

Decided:   March 7, 2016

S15G1011.  STRICKLAND et al. v. STRICKLAND.

THOMPSON, Chief Justice.

This case involves a custody dispute between a biological mother and her parents over three minor children.[1]   In 2006, Roy and Betty Strickland ("grandparents") obtained emergency custody of the three minor children of their daughter, Lea Strickland ("mother").  Subsequently, in October 2008, the juvenile court found all three children were deprived and, with mother's consent, extended the grandparents' temporary custody of the children through July 2010, granting mother supervised visitation.  In mid-2010, grandparents filed a petition for permanent custody in Paulding County Superior Court.  The case was transferred to Cobb County Superior Court after the parties agreed venue was appropriate there.  Following a five day bench trial, the superior court

---

[1] The oldest daughter, C.S, was born in September 1998, L.T., a son, was born in July 2000, and the youngest daughter, I.S. was born in August 2006.  While all three children have different biological fathers, only L.T.'s father had custodial rights and was a co-defendant with mother in the case below.

entered an order granting grandparents' petition. Mother appealed, and finding

that grandparents had failed to meet the high burden of proof sufficient to

deprive mother of her custodial rights to the children, the Court of Appeals

reversed the trial court. See <u>Strickland v. Strickland</u>, 330 Ga. App. 879 (769

SE2d 607) (2015). Grandparents filed a petition for writ of certiorari in which

they claimed the Court of Appeals erred in failing to give appropriate deference

to the trial court's factual findings and thus erred in reversing the trial court's

award of permanent custody to them. Because we find the Court of Appeals

failed to properly apply the correct standard of review, we reverse the decision

in this case.

1. Custody disputes between a natural parent and close third party

relatives are governed by OCGA § 19-7-1 (b.1).[2] This statute provides that, in

___

[2] OCGA § 19-7-1 (b.1) provides in pertinent part:

[I]n any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

awarding custody, "[t]he sole issue for determination . . . shall be what is in the best interest of the child or children." OCGA § 19-7-1 (b.1). However, it also establishes a rebuttable presumption that it is in the best interest of a child to award custody to the parent of the child. Id. To overcome this presumption, a third-party relative must show, with clear and convincing evidence, that the child will suffer either physical harm or significant, long-term emotional harm if custody is awarded to the parent. See Clark v. Wade, 273 Ga. 587, 598-599 (IV) (544 SE2d 99) (2001). In addressing the issue of harm, trial courts must consider a variety of factors beyond biological connection or generalized notions of parental fitness. They also must consider the parental needs and the circumstances of the child in question, see id., including (1) who are the past and present caretakers of the child or children; (2) with whom has the child or children formed psychological bonds and how strong are these bonds; (3) have the competing parties evidenced interest in, and contact with, the child or children over time; and (4) are there any unique medical or psychological needs of the child or children. Id.

In its detailed order awarding custody of all three children to grandparents

and granting conditional unsupervised visitation to mother, the trial court correctly set out the above law, made findings of fact, applied these findings to the factors identified by this Court in Clark, supra, and concluded grandparents had established by clear and convincing evidence that the children would suffer significant long-term emotional harm if mother received custody. Delineating findings of fact as to each child and the parties, the superior court's order references the recommendations of the court appointed Guardian Ad Litem ("GAL") on which it relied, and credits the testimony of the children's treating psychologists, which testimony the court found corroborated by the GAL's investigation and the testimony of other witnesses, and un-rebutted by mother.

Specifically, the trial court found that mother lacked both an income and a stable residence, her interest in the children was sporadic, and she exhibited disruptive and erratic behavior in public in the presence of the children. With respect to her drug use, the superior court observed mother had experimented with ecstasy, methamphetamine, and cocaine in the past, and admitted she had been a daily user of marijuana and alcohol for most of her life. The superior court also had evidence before it showing that mother was charged in May 2009 with misdemeanor marijuana possession and, after meeting with a drug

4

addiction counselor three times and passing a drug test, was discharged from counseling as being clean and sober. Subsequently, during the pendency of the instant custody action, mother was arrested for driving under the influence and admitted to officers that she had smoked marijuana that day. Mother pled guilty to reckless driving as a result of this arrest and, as a condition of probation following entry of this guilty plea, was again required to meet with a drug addiction counselor and attend counseling sessions twice a week for three to six months. Despite testifying that mother failed to fully comply with these requirements, mother's drug addiction counselor certified her as not currently drug dependent based on her having passed several drug tests and completing approximately two and a half hours of counseling, an assessment the superior court explicitly rejected in its order as unpersuasive. The superior court additionally noted that although mother had been treated by the same psychiatrist for bipolar disorder for approximately 10 years, she admitted never informing him about her marijuana and alcohol use.

With respect to the children, the superior court determined based on the testimony of each child's therapist, the findings of the guardian ad litem, and the court's own interviews with each child, that the children had bonded with their

grandparents, having exclusively resided with them since 2006; that all of the children had unique psychological issues which only the grandparents had addressed; and that there was clear and convincing evidence that the children would suffer significant long-term emotional harm if they were placed in mother's custody.[3] Finding the presumption in favor of mother had been rebutted by the foregoing evidence, much of which required the court to assess the credibility of the witnesses' testimony, the superior court additionally determined the evidence was clear and convincing that it was in the children's best interest for grandparents to be awarded permanent custody. In reversing the

---

[3] Specifically, the superior court found that the youngest child, I.S., had lived with her grandparents all her life and was a happy and well-adjusted child prior to the instant custody dispute. According to the record, I.S.'s treating psychologist diagnosed her with an adjustment disorder resulting from anxiety, and testified that she was suffering emotionally from a heightened level of insecurity due to the conflict; that she exhibited increased defiance and aggression following contact with mother; and that, in the psychologist's professional opinion, I.S. would suffer long term emotional harm if removed from her grandparent's care and placed in mother's custody. Similarly, the superior court found that, C.S., the oldest child, had been receiving professional counseling for years to address family issues, including her concerns about mother's substance abuse problems. At trial, C.S.'s psychologist testified that C.S. viewed mother as unreliable, unpredictable, immature and embarrassing; gave specific examples of incidents related to her by C.S. of inappropriate behavior and poor judgment on mother's part which the psychologist viewed as psychologically damaging to the child; and, opined that C.S. would suffer long term emotional harm if placed in mother's custody. Observing that C.S. had a close relationship with grandparents, the superior court found she was an excellent student with a five-year perfect school attendance record, was popular and a leader among her peers, attended church regularly and was active in her youth group. Finally, the superior court found that L.T., the middle child and only boy, had been under the treatment of a psychologist for over four years and had been diagnosed with major depressive disorder. Although acknowledging that L.T. suffered from complex emotional issues requiring continued treatment, the court noted that the evidence also showed that L.T. was an average student with perfect attendance, was involved in extracurricular activities and sports, and attended church regularly where he participated in choir and youth activities.

6

superior court's custody ruling, the Court of Appeals recognized that it was required to "view the evidence in the light most favorable to the trial court's decision," see Whitehead v. Myers, 311 Ga. App. 680, 688 (1) (716 SE2d 785) (2011), but proceeded to reject many of the superior court's factual findings with little or no discussion as to whether these findings were supported by evidence in the record. See Strickland, supra at 879.

As stated previously, grandparents argue that the Court of Appeals erred in failing to give proper deference to the superior court's factual findings in this case and, based on our review of the record, we agree. In the appellate review of a bench trial, a trial court's factual findings must not be set aside unless they are clearly erroneous. See Ellis v. Ellis, 290 Ga. 616, 617 (724 SE2d 384) (2012); Langley v. Langley, 279 Ga. 374 (613 SE2d 614) (2005); Tanksley v. Parker, 278 Ga. 877 (1) (608 SE2d 596) (2005). Rather, due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses. Ellis, supra. Far from viewing the evidence in the light most favorable to the superior court's decision, or determining that the superior court's factual findings on the relevant issues were clearly erroneous, the record demonstrates that the Court of Appeals conducted its own review of

7

the evidence, giving insufficient deference to the trial court findings of fact and credibility determinations. For example, the Court of Appeals concluded that the evidence showed mother had a job working from home, had a stable living environment with her fiancé, had completed substance abuse treatment and passed drug tests showing she was drug free, had and continued to receive treatment for her mental health issues, maintained a strong bond with her children, and was capable of addressing the children's psychological needs. In making these findings, the Court of Appeals disregarded much of the evidence on which the superior court relied, including evidence that mother frequently stayed overnight at places other than her fiancé's residence,[4] that she received no income from her alleged employment,[5] and that she may not be drug free. Moreover, the Court of Appeals gave no weight to the superior court's findings that mother never reached out to her children's psychologists to obtain

---

[4] The superior court cited evidence showing that in several of the months preceding the custody trial, mother spent more nights each month at various local hotels, apartments, mobile home parks and houses with different people, at least one of whom was identified as a known drug user, than she did at her fiancé's residence.

[5] Although the evidence is undisputed that mother received no income from her claimed employment of working for her fiancé, the Court of Appeals found that mother and her sister each owned an interest in a limited family partnership managed by their father. The Court of Appeals surmised that mother would be entitled to receive a share of the monthly income earned by the family partnership, even though the evidence showed neither mother nor her sister had ever received a distribution.

information about their issues, to discuss their needs, or to participate in their therapy; that mother lied to and/or withheld information from her own psychiatrist about her drug and alcohol abuse; and that mother repeatedly missed her own scheduled counseling sessions.

Mother's emotional immaturity, lack of parenting skills, inappropriate conduct, drug abuse, and irresponsibility towards her children were well documented in the record. Although mother presented evidence aimed at showing she was prepared to meet her children's current and future needs, it was for the superior court, not the Court of Appeals to resolve conflicts in the testimony. See Haskell v. Haskell, 286 Ga. 112 (1) (686 SE2d 102) (2009).[6] After reviewing the record and giving the trial court's findings of fact the required deference, see Ellis, supra, we cannot conclude that these factual findings are clearly erroneous. Furthermore, based on these factual findings, the

---

[6] As this Court recently observed,

[w]here . . .the trial court has made extensive findings of fact, we generally must presume that the absence of a finding of a fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact, especially where there were grounds upon which the trial court properly could have assigned no weight to such evidence.

Hughes v. State, 296 Ga. 744, 747 (770 SE2d 636) (2015).

superior court was authorized to conclude that the statutory presumption in favor of mother had been overcome by clear and convincing evidence that the children would suffer significant long term emotional harm if she was awarded custody. Accordingly, we reverse the decision of the Court of Appeals.

2. Because we held in Division 1of this opinion that reviewing the evidence in the light most favorable to the trial court's decision the statutory presumption in favor of awarding custody of the children to mother has been rebutted by clear and convincing evidence, we must now consider whether the superior court erred in awarding custody of the children to grandparents.[7] See OCGA § 19-7-1 (b.1); Harris v. Snelgrove, 290 Ga. 181, 183 (718 SE3d 300) (2011). Given the evidence presented, we find the superior court was authorized to conclude that grandparents had demonstrated by clear and convincing evidence that a permanent award of custody to them would be in the children's best interest. See generally In re D. W., 311 Ga. App. 680, 688 (716 SE2d 785) (2011).

Judgment reversed. All the Justices concur.

---

[7] Having determined that grandparents failed to overcome mother's presumptive right to custody in this case, the Court of Appeals decided it need not consider whether grandparents had demonstrated that a permanent award of custody to them would be in the children's best interest. See Strickland, supra at 883, n. 6.