**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 4, 2021**

# In the Court of Appeals of Georgia

A21A0980. SKINNER v. MILES.

REESE, Judge.

Robin Miles filed suit against Sarah Skinner under OCGA § 19-7-3.1, the Equitable Caregiver Act (the "Act"), seeking to be adjudicated an equitable caregiver and requesting that the superior court determine custody of and parenting time for two minor children, S. M. S. and K. M. S. Skinner responded, and following a bench trial, the court ruled in favor of Miles, granting her standing as an equitable caregiver and issuing a parenting plan. This appeal followed. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the trial court's judgment,[1] the evidence shows the following. Miles and Skinner met while working as teachers at the same

---

[1] See *Braddock v. Lindsey*, 355 Ga. App. 700-701 (845 SE2d 731) (2020).

school in 1997, began dating approximately two years later, and eventually purchased a home together. The women also both wore rings on their left ring fingers as symbols of their commitment to each other, and discussed having children.

The women contacted an agency to assist in their efforts to adopt a child, and Skinner began undergoing fertility treatments and artificial insemination in hopes of becoming pregnant. In 2009, Miles and Skinner were notified that they had an opportunity to adopt a newborn baby in Texas, so they immediately flew to Dallas to begin the adoption process. Skinner was the only parent listed on the adoption paperwork because Texas law did not allow same-sex couples to adopt. However, the couple used Miles's surname as the child's middle name to recognize her role in his life. Shortly after returning to Georgia, the couple discovered that Skinner was pregnant, and she gave birth in January 2010. The couple decided to also use Miles's surname as the child's middle name in recognition of her role in the child's life.

Although the parties had separate bank accounts, Miles provided Skinner money, which Skinner used to help pay the necessary home and child expenses, although the frequency and amounts of these payments varied. The children referred to Miles as "Momma" or "Mombo" and Skinner as "Mommy," and both women assisted in caring for the children, including bathing, feeding, and changing them, in

addition to taking them to extracurricular activities. The parties also took the kids on annual vacations, celebrated holidays together, and mailed Christmas cards to friends and family featuring pictures of themselves and the kids. Miles and Skinner separated in approximately 2015, and Skinner married Kelly Walter in 2018.

After Miles and Skinner separated and obtained different residences, the children lived with Skinner, but Miles continued to visit them. The children often stayed at her house during scheduled visitations. In approximately 2017, however, Skinner presented Miles with a proposed visitation arrangement, which Miles believed limited her time with the children. Miles subsequently filed a Petition to Determine Parenting Time ("Petition") in the superior court. Following a joint mediation, the parties entered into a Visitation Arrangement and Miles voluntarily dismissed the Petition.

Once OCGA § 19-7-3.1 became effective in July 2019, Miles filed an action seeking designation as an equitable caregiver and a determination of visitation and custody rights.[2] The trial court held a four-day bench trial, where the parties presented testimony regarding, inter alia, the previous relationship between Miles and Skinner, Miles's relationship with the children, Miles's role in their lives, and any potential

_____

[2] See 2019 Ga. Laws 632, § 1 (effective date July 1, 2019).

3

harm that might result if Miles was not granted equitable caregiver status. Following the trial, the court ruled in Miles's favor, finding that she had "established a strong bond with both minor children and that [she] had an ongoing relationship with both children since [S. M. S.'s] adoption and [K. M. S.'s] birth." The court also found that if Miles was not granted equitable caregiver status, the children would suffer long-term emotional harm. This appeal followed.

In cases involving custody issues, "a trial court's factual findings must not be set aside unless they are clearly erroneous. Rather, due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses."[3] However, we review de novo the legal conclusions that the trial court draws from the facts.[4] With these guiding principles in mind, we now turn to Skinner's claims of error.

---

[3] *Strickland v. Strickland*, 298 Ga. 630, 633-634 (1) (783 SE2d 606) (2016) (citations and punctuation omitted). Although Miles asserts that the correct standard of review is the any evidence standard, the Supreme Court of Georgia has stated, "[i]n Georgia, it is well-settled that the clearly erroneous standard for reviewing findings of fact is equivalent to the highly deferential any evidence test." *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (citations and punctuation omitted).

[4] *Braddock*, 355 Ga. App. at 703.

1. Skinner argues that the trial court erred in granting Miles standing as an equitable caregiver under OCGA § 19-7-3.1. Specifically, Skinner alleges that Miles failed to satisfy the required statutory elements by clear and convincing evidence.

Under OCGA § 19-7-3.1, which became effective July 1, 2019, courts are permitted to "adjudicate an individual to be an equitable caregiver."[5] The statute provides that once the individual seeking to be adjudicated an equitable caregiver has filed the initial pleading, along with an affidavit to support the existence of an equitable caregiver relationship with the child, and the "adverse party, parent, or legal guardian" has filed a responsive pleading and an accompanying affidavit, the court must undertake a two-part analysis. First,

> [t]he court shall determine on the basis of the pleadings and affidavits . . . whether such individual has presented prima facie evidence of the requirements set forth in subsection (d) of [OCGA § 19-7-3.1] this Code section. The court may in its sole discretion, if necessary and on an expedited basis, hold a hearing to determine undisputed facts that are necessary and material to the issue of standing[.][6]

---

[5] OCGA § 19-7-3.1 (a).

[6] OCGA § 19-7-3.1 (b) (3).

5

If the court finds the party has satisfied this requirement, "the party claiming to be an equitable caregiver has standing to proceed to adjudication under [OCGA § 19-7-3.1 (d)]."[7]

The second step of the analysis requires that the court find, by clear and convincing evidence, that the individual has:

> (1) Fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life;
> (2) Engaged in consistent caretaking of the child;
> (3) Established a bonded and dependent relationship with the child, which relationship was fostered or supported by a parent of the child, and such individual and the parent have understood, acknowledged, or accepted that or behaved as though such individual is a parent of the child;
> (4) Accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and
> (5) Demonstrated that the child will suffer physical harm or long-term emotional harm and that continuing the relationship between such individual and the child is in the best interest of the child.[8]

The Act also states that in determining the existence of harm, the court shall consider factors related to the child's needs, including, but not limited to:

---

[7] OCGA § 19-7-3.1 (b) (4).

[8] OCGA § 19-7-3.1 (d) (1)-(5).

(1) Who are the past and present caretakers of the child;

(2) With whom has the child formed psychological bonds and the strength of those bonds;

(3) Whether competing parties evidenced an interest in, and contact with, the child over time; and

(4) Whether the child has unique medical or psychological needs that one party is better able to meet.[9]

Following this analysis, "[t]he court may enter an order as appropriate to establish parental rights and responsibilities for such individual, including, but not limited to, custody or visitation."[10]

In discussing parents' custody rights in general, the Supreme Court of Georgia has stated:

Parents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children. This right to the custody and control of one's child is a fiercely guarded right that should be infringed upon only under the most compelling circumstances. . . . Aligned against the parents' constitutional right is the child's

---

[9] OCGA § 19-7-3.1 (e) (1)-(4).

[10] OCGA § 19-7-3.1 (g).

constitutional right to protection of his or her person and the state's compelling interest in protecting the welfare of children.[11]

In light of the above, we proceed to analyze the trial court's findings under the five factors listed in OCGA § 19-7-3.1 (d).

(a) *Permanent, unequivocal, committed, and responsible parental role.* Skinner contends that Miles failed to demonstrate that she fully and completely undertook a permanent, unequivocal, committed, and responsible parental role in the children's lives. However, the trial court found that Miles had served as a parental figure for both children since the time S. M. S. was adopted and K. M. S. was born. Supporting the trial court's finding, evidence presented at trial showed that Miles and Skinner sent Christmas cards to friends and family featuring pictures of both women and the children, that she attended the children's extracurricular events, and that she was listed on the children's school and medical forms until approximately 2018 after Skinner and Miles separated. Additionally, Miles and Skinner agreed to use Miles's surname as the children's middle names to recognize her role in their lives. Finally,

---

[11] *Clark v. Wade*, 273 Ga. 587, 596-597 (IV) (544 SE2d 99) (2001) (punctuation and footnotes omitted).

8

Miles provided financial support to Skinner to help with costs associated with the children and the household both while they were together and after they separated.

(b) *Engaged in consistent caretaking of the children*. Skinner argues that the evidence did not support the trial court's finding that Miles engaged in consistent caretaking of the children. Rather, Skinner maintains that the evidence at trial established that Miles failed or refused to consistently engage in caretaking of the children. However, testimony at trial demonstrated that Miles assisted in feeding, bathing, changing, and generally caring for the children. Further, Miles presented evidence that she drove the kids to some of their extracurricular events and that she met their teachers.

(c) *Established a bonded and dependent relationship with the children*. Skinner asserts that Miles failed to present evidence establishing that the children had a bonded and dependent relationship with Miles. However, the court found that Miles had "strongly bonded with both children and . . . made many sacrifices on the children's behalf." Consistent with this finding, evidence presented at trial showed that both children referred to Miles as "Momma," and testimony from the guardian ad litem stated that she had a bond with the children that was repairable even though it was "currently fractured." Moreover, as noted above, Miles's surname was used as

the children's middle names in light of her role in their lives, and Miles was included in both the document submitted to potential birth mothers to assist in the parties' efforts to adopt and in family holiday cards. Finally, Skinner testified, "So I don't think there was ever a question about whether or not [Miles] and I launched into the endeavor of pursuing children together."

(d) *Accepted full and permanent responsibilities as a parent without expectation of financial compensation.* While Skinner does not claim that Miles had an expectation of financial compensation connected to her relationship with the children, Skinner does assert that Miles failed to demonstrate that she accepted full and permanent responsibilities as a parent. However, as discussed previously, Miles presented evidence at trial of her acceptance of the responsibilities as the children's parent.

(e) *Demonstrated the children will suffer physical harm or long-term emotional harm and that continuing the relationship is in the best interest of the children.* Skinner contends that Miles did not establish by clear and convincing evidence that the children will suffer physical or long-term emotional harm if the court did not grant Miles equitable caregiver status. However, after considering the factors listed in the statute for determining harm, the court concluded that Miles demonstrated that

10

the children would suffer physical or long-term emotion harm, and that continuing the relationship between Miles and the children was in the children's best interest. At trial, Miles presented evidence that she acted in the caretaker role for both children from the time of their adoption and birth until her time with them was restricted. Additionally, as noted above, testimony at trial confirmed that Miles formed a bond with the children, and that both children saw her as their parent and referred to her as "Momma." Moreover, Miles demonstrated a desire to maintain contact with the children as she continued to visit with them, assisted in taking them to extracurricular activities and school, and took them on trips even after Miles and Skinner separated. Finally, although there was some evidence presented regarding S. M. S.'s diagnoses of Attention-Deficit/Hyperactivity Disorder and anxiety, testimony at trial did not establish that the children had conditions that one party would be better equipped to address.

"Due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses, and the evidence must be construed in the light most favorable to the trial court's decision."[12] Therefore,

---

[12] *Holdaway v. Holdaway*, 338 Ga. App. 477, 483 (789 SE2d 817) (2016) (citation and punctuation omitted).

11

considering the foregoing, and "in light of the deferential standard of review,"[13] we conclude that the record supports the court's ruling that Miles satisfied, by clear and convincing evidence, all of the required elements of OCGA § 19-7-3.1, and that the court did not err in designating Miles an equitable caregiver.[14]

2. Skinner summarily asserts that the trial court erred in granting joint legal or physical custody of or visitation with the children to Miles as she failed to satisfy the requirements under OCGA § 19-7-3.1. However, based on our ruling in Division 1, supra, that the trial court did not err in adjudicating Miles as an equitable caregiver, we conclude that the court was also justified in issuing an order regarding custody and visitation pursuant to OCGA § 19-7-3.1.[15]

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[13] Id. at 484 (1).

[14] See *Strickland*, 298 Ga. at 635 (1); *Braddock,* 355 Ga. App. at 706 (2).

[15] See *Strickland*, 298 Ga. at 635 (2); *Mashburn v. Mashburn*, 353 Ga. App. 31, 44 (1) (a) (i) (836 SE2d 131) (2019) ("[W]e note that although clear and convincing evidence represents a heightened standard of proof, it [does] not require [the plaintiff] to come forward with unequivocal or undisputed evidence . . . .") (punctuation omitted).