**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 14, 2022**

# In the Court of Appeals of Georgia

A22A0721. HAYLE v. INGRAM.

Barnes, Presiding Judge.

Keino Hayle, the biological father of the minor child, E. T., appeals from the trial court's final order awarding permanent custody of the child to the maternal grandmother, Jennifer Tinker Ingram, and granting him supervised visitation. The father contends that there was insufficient evidence to support the trial court's custody determination. For the reasons discussed below, we affirm.

"When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision." (Citation and punctuation omitted.) *Richello v. Wilkinson*, 361 Ga. App. 703, 704 (865 SE2d 571) (2021). So viewed, the record reflects that the mother and father of E. T. had an on-again, off-again relationship and were never married. Their relationship was marked by "constant

fighting," and the father verbally and physically abused the mother, who suffered from ongoing substance abuse and mental health issues. During one episode of physical abuse witnessed by a maternal aunt, the mother and father were in an argument, and the father grabbed the mother by the wrist and neck and began strangling her. During other episodes witnessed by the aunt, the father held the mother down and grabbed her and would not let her go. The aunt also heard the father "engage in a lot of gas lighting" and call the mother names, tell the mother that she needed drugs, and repeatedly scream at the mother that she needed to abort the child once she became pregnant.

When the child was born in December 2017, the mother tested positive for drugs. The father was away attending college in North Carolina and did not attend the birth. After the mother's positive drug test, the child was placed in the temporary custody of the maternal grandmother under a safety plan developed by the Department of Family and Children Services ("DFCS"), and the mother and father were allowed only supervised visitation.[1] During one supervised visit at the

---

[1] DFCS filed a dependency petition, which was later dismissed for reasons unclear from the record.

grandmother's home, the grandmother heard the mother screaming for her, ran to see what was wrong, and saw the father strangling the mother in front of the child.

Approximately three months after the child's birth, the mother and father ended their relationship. The grandmother offered the father supervised visits with the child, but he refused. While the father sent some gifts to the child, he provided no financial support. The father continued to reside in North Carolina after graduating from college. He began a relationship with a new girlfriend, and they moved in together. In November 2018, the father was arrested for assaulting his new girlfriend. She told the police that the father hit her multiple times in the back of the head with a closed fist, causing a bump to form. The assault charge was dismissed at the request of the girlfriend.

In December 2018, the grandmother filed a petition in the Superior Court of Catoosa County seeking temporary and permanent custody of the child. The father answered and filed a counterclaim in which he sought to legitimate the child and obtain custody.[2] The mother, who was then incarcerated, did not participate in the custody proceedings.

---

[2] The father's paternity was established through DNA testing conducted by DFCS.

In September 2019, when the child was 21 months old, the trial court held a temporary custody hearing. Among other things, the grandmother testified about the father's verbal and physical abuse of the mother that she witnessed. Additionally, the grandmother's counsel introduced into evidence the police incident report for the November 2018 assault that included the girlfriend's statement describing how the father physically assaulted her. The father also testified at the hearing and denied abusing the mother or his girlfriend. The father's girlfriend, who was pregnant with their son, testified as well and denied that the father assaulted her.

Following the temporary hearing, the trial court entered an order legitimating the child, granting the grandmother temporary custody of the child and the father supervised visitation, and ordering the father to pay child support. After entry of the temporary custody order, the father delayed contacting a supervised visitation center to arrange for visitation and fell behind on paying child support. In September 2020, the father was arrested a second time for assaulting his girlfriend. She told the police that the father punched her in the face and struck her arm, causing swelling and bruising. The girlfriend later denied that she had been assaulted by the father, and the charge was dismissed.

4

In May 2021, when the child was three years old, the trial court conducted the final custody hearing. When the hearing began, the trial court stated that it would take into account the evidence introduced at the temporary hearing in reaching its final custody decision, and the parties agreed that the exhibits introduced at the temporary hearing would be included as part of the record for the final hearing. The hearing then proceeded forward, and the maternal grandmother and maternal aunt testified regarding, among other things, the incidents they witnessed where the father physically abused the mother. The grandmother further testified that she would be concerned with the physical and long-term emotional health of the child if placed with the father in light of his abusive behavior. The aunt, who was a social service worker with experience working with family violence victims, testified that the grandmother had a strong bond with the child, and that she would be uncomfortable with the child spending time unsupervised with the father in light of "his history with family violence." Further, the grandmother's counsel introduced into evidence additional police records associated with the father, including the September 2020 police incident report in which the father's new girlfriend described how the father assaulted her that day. The father and his girlfriend also testified at the hearing, and both denied that he assaulted her in September 2020.

Following the hearing, the trial court entered its final order awarding permanent custody to the grandmother and supervised visitation to the father. The trial court made several factual findings, including that the father "continues a practice of family violence/domestic abuse that was prevalent with the . . . mother and with other partners" and that his home thus was not a "safe environment." The trial court expressly determined that there was clear and convincing evidence that the child would suffer either physical harm or significant long-term emotional harm if custody were awarded to the father, and that awarding permanent custody to the grandmother would best suit the happiness and welfare of the child and would be in the child's best interest. The father now appeals from the trial court's final order, challenging the sufficiency of the evidence to support the custody determination.[3]

1. At the outset, we note that the transcripts of the temporary and final hearings transmitted to this Court do not include any of the exhibits introduced at those hearings. "[I]t is critical that the certified . . . transcript reviewed by an appellate court speak the truth so that the appellate court can conduct its review with the knowledge that the transcript accurately reflects what took place in the trial court[.]" *State v.*

---

[3] The mother did not appeal the trial court's order or submit a brief in the current appeal.

*Nejad*, 286 Ga. 695, 697 (1) (690 SE2d 846) (2010). Furthermore, "[a]n appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld." (Citation and punctuation omitted.) *Thomas v. Alligood*, 358 Ga. App. 703, 710 (2) (a) (856 SE2d 80) (2021). Nevertheless, while we have no duty to cull the record on the appellant's behalf, see *Pneumo Abex v. Long*, 357 Ga. App. 17, 17, n. 3 (849 SE2d 746) (2020), we have identified several of the pertinent documents introduced as exhibits at the hearings in other portions of the record, including the police incident reports previously discussed. Consequently, we will proceed to address the father's sufficiency claim "because we can resolve the issue in this case . . . on the record available to us.*" Agnes Scott College v. Hartley*, 346 Ga. App. 841, 843 (2) (816 SE2d 689) (2018). But "we caution that if we have missed something in the record or misconstrued an argument, the responsibility rests with [the father's] counsel." (Citation and punctuation omitted.) *Pneumo Abex*, 357 Ga. App. at 17, n. 3.

2. We turn now to the father's sufficiency challenge, mindful of the applicable statutory framework. OCGA § 19-7-1 (b.1) governs custody disputes between a

7

biological parent and certain third-party relatives, including grandparents.[4] See

*Strickland v. Strickland*, 298 Ga. 630, 631 (1) (783 SE2d 606) (2016). The statute

establishes a rebuttable presumption that it is in the best interest of a child to award

custody to his or her parent. Id. "To overcome this presumption, a third-party relative

must show, with clear and convincing evidence, that the child will suffer either

physical harm or significant, long-term emotional harm if custody is awarded to the

parent."[5] Id. See *Clark v. Wade*, 273 Ga. 587, 599 (V) (544 SE2d 99) (2001). Once

---

[4] OCGA § 19-7-1 (b.1) provides:

Notwithstanding subsections (a) and (b) of this Code section or any other law to the contrary, in any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

[5] In considering the issue of harm, trial courts should consider a variety of factors, including:

the presumption is overcome, the third-party relative "must then show that an award of custody to him or her will best promote the child's welfare and happiness." *Clark*, 273 Ga. at 599 (V).

> In reviewing a trial court's findings in a custody dispute under OCGA § 19-7-1 (b.1), we are mindful that . . . a trial court's factual findings must not be set aside unless they are clearly erroneous. Due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses, and the evidence must be construed in the light most favorable to the trial court's decision. As our Supreme Court has emphasized, it is for the trial court, not appellate courts, "to resolve conflicts in the testimony" in determining whether a child will suffer physical harm or significant, long-term emotional harm if returned to the custody of the biological parent. [*Strickland*, 298 Ga. at 634 (1)].

(Citations and punctuation omitted.) *Holdaway v. Holdaway*, 338 Ga. App. 477, 483 (789 SE2d 817) (2016).

---

(1) who are the past and present caretakers of the child or children; (2) with whom has the child or children formed psychological bonds and how strong are these bonds; (3) have the competing parties evidenced interest in, and contact with, the child or children over time; and (4) are there any unique medical or psychological needs of the child or children. *Strickland*, 298 Ga. at 631 (1).

9

On appeal, the father contends that there was insufficient clear and convincing evidence to support the trial court's determination that the child would suffer physical or significant, long-term emotional harm if custody were awarded to him.[6] We disagree.

As summarized above, the maternal grandmother presented evidence – through her own testimony, the testimony of the maternal aunt, and police records[7] – that the father has engaged in a lengthy, ongoing pattern of domestic violence against his romantic partners, including at least one incident in the presence of the child and one incident that occurred during the custody proceedings. This combined evidence, construed under the appropriate deferential standard of review, supports the trial court's determination that there was clear and convincing evidence that the child

---

[6] The father also contends that there was insufficient clear and convincing evidence of dependency to support the trial court's custody determination. The present case, however, is a third-party relative custody action controlled by OCGA § 19-7-1 (b.1) and the legal framework enunciated in *Clark v. Wade*, 273 Ga. 587, and its progeny, not a dependency action. Compare generally *In the Interest of R. D.*, 346 Ga. App. 257, 259-260 (1) (816 SE2d 132) (2018) (applying the test for dependency where DFCS filed a dependency petition and the trial court entered an order finding the children dependent).

[7] On appeal, the father does not challenge the admission of the police records, and thus he has abandoned any claim that the records were inadmissible on hearsay or other evidentiary grounds. See *Hartzler v. State*, 332 Ga. App. 674, 680 (2), n. 22 (774 SE2d 738) (2015). See also Court of Appeals Rule 25 (c) (2).

would suffer physical or significant long-term emotional harm if custody were awarded to the father. See *Blackwelder v. Shugard*, 360 Ga. App. 306, 310 (1) (861 SE2d 141) (2021) (holding, in case involving "history of domestic violence," that the trial court was entitled to find that the child would suffer physical or significant, long-term emotional harm if custody were awarded to the father); *In the Interest of C. H.*, 305 Ga. App. 549, 556 (1) (700 SE2d 203) (2010) (concluding, in termination-of-parental rights case where "the parents had engaged in a lengthy, persistent course of violent, confrontational conduct with each other over the years, sometimes in the presence of the children," that the trial court could find "that such violence would continue and would have an adverse effect on [the child]"); *In the Interest of T. G.*, 269 Ga. App. 278, 284 (603 SE2d 764) (2004) (holding in termination-of-parental-rights case that the evidence of the parent's extensive history of domestic violence, which included incidents in the presence of the children, supported the trial court's finding that returning the children "back into a volatile environment where they [would be] subject to sudden and violent altercations between their parents" would cause them serious harm); *In the Interest of G. B.*, 263 Ga. App. 577, 582-583 (1) (588 SE2d 779) (2003) (upholding in termination-of-parental-rights case the trial court's finding that the child would suffer harm if returned to the custody of the

11

mother, where there was a history of domestic violence occurring around the child and the child would be placed back into that environment if the mother were granted custody). While the father and his new girlfriend denied that the father committed any acts of domestic violence, it was for the trial court, not this Court, to resolve conflicts in the evidence and determine witness credibility.[8] *Holdaway*, 338 Ga. App. at 483. "[A]lthough clear and convincing evidence represents a heightened standard of proof, it did not require the grand[mother] to come forward with unequivocal or undisputed evidence that custody with the [father] would result in . . . harm to [the child]." *Mashburn v. Mashburn*, 353 Ga. App. 31, 44 (1) (a) (i) (836 SE2d 131) (2019). Accordingly, we discern no clear error by the trial court and affirm the final custody order.[9]

---

[8] The present case is distinguishable from cases involving parental custody where there was no evidence of any incidents of domestic violence committed in the presence of the child and/or where there was no evidence of an ongoing pattern of such violence. See, e.g., *In the Interest of M. S.*, 352 Ga. App. 249, 260-261 (834 SE2d 343) (2019); *In the Interest of K. D.*, 344 Ga. App. 423, 427 (1) (810 SE2d 193) (2018); *In the Interest of A. W.*, 340 Ga. App. 406, 412 (1) (a) (797 SE2d 655) (2017); *In the Interest of G. R. B.*, 330 Ga. App. 693, 701 (769 SE2d 119) (2015).

[9] The father does not present any legal citation or argument that the trial court erred in finding that an award of custody to the grandmother would best suit the happiness and welfare of the child. The father therefore has abandoned any such argument on appeal. See *134 Baker St. v. State*, 172 Ga. App. 738, 741-742 (5) (324 SE2d 575) (1984) (noting that matters "not argued before this court are deemed

*Judgment affirmed. Brown and Hodges, JJ., concur.*



abandoned"). See also Court of Appeals Rule 25 (c) (2).